IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MED VISION, INC.**, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:15-CV-77-L** |
| **MEDIGAIN, LLC**, *et al.*, | § | |
| | § | **Filed Under Seal** |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiffs' Opposed Motion to Enforce Mediated Settlement Agreement

("Motion") (Doc. 100), filed December 15, 2015; Plaintiffs' Supplemental Motion to Enforce

Mediated Settlement Agreement ("Supplemental Motion") (Doc. 115), filed January 21, 2016; and

Plaintiffs' Motion for Leave to File Under Seal Plaintiffs' Reply in Support of Objections to

Findings, Conclusions, and Recommendation of the United States Magistrate Judge (Doc. 158), filed

September 7, 2016.[1]  In their Motion and Supplemental Motion (collectively, "Motions"), Plaintiffs

request that the court require Defendants "to execute the settlement documents which have been

agreed upon, with the previously agreed upon but unincorporated modifications, including the

Agreed Final Judgement proposed by Plaintiffs. Alternatively, Plaintiffs respectfully request that the

Court enforce the mediated Settlement Agreement as written."  Pls.' Mot. 7, Pls.' Supp. Mot. 5.

On July 7, 2016, United States Magistrate Judge Paul D. Stickney entered the Findings,

Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 140),

---

[1] After receiving notice from the mediator that this case had settled, the court administratively closed the case
on November 12, 2015, and directed the parties to file a stipulation or notice of dismissal or agreed motion to dismiss
this action by May 10, 2016. The court subsequently vacated the parties' May 10, 2016 deadline pending resolution of
the parties' dispute that is the subject of this order and, hereby, **reopens** the case.

**Memorandum Opinion and Order – Page 1**

recommending that the court grant in part and deny in part Plaintiffs' Motions. Specifically, the magistrate judge recommended that the court grant Plaintiffs' request to enforce the mediated settlement agreement to the extent set forth in the Report but deny Plaintiffs' request for an award of attorney's fees and sanctions against Defendants.

Plaintiffs MedVision, Inc. ("MedVision"); Medi-Tech Medical Billing Services, Inc. ("Medi-Tech"); Phycom Group, Inc. ("Phycom"); Kenneth S. Alston ("Alston"); and Alexander Wang ("Wang") (collectively, "Plaintiffs") and Defendant Gregory Hackney ("Hackney") filed objections to the Report. Plaintiffs object to the magistrate judge's recommendation regarding attorney's fees. Plaintiffs also seek clarification or object to the extent that the magistrate judge "did not recommend that the District Court also Order the Defendants to execute the Agreed Judgment and the Defendants' Notice of Dismissal of Counterclaims with Prejudice which will be presented to Defendants due to their uncur[]ed default." Pls.' Obj. 4. In addition, Plaintiffs object to the extent that the magistrate judge did not address their request for the court to retain jurisdiction "over this matter to ensure compliance with the [MSA] and for purposes of enforcement of the judgment." Pls.' Obj. 4. Hackney objects to the magistrate judge's recommendation requiring Defendants to execute an agreed judgment and contends that the magistrate judge correctly denied Plaintiffs' request for attorney's fees and sanctions.

Plaintiffs' Motion for Leave to File Under Seal Plaintiffs' Reply in Support of Objections to Findings, Conclusions, and Recommendation of the United States Magistrate Judge (Doc. 158) is **granted,** and the clerk **shall file under seal** with a file date of **September 7, 2016**, the reply brief and the exhibits to the reply brief that are attached to the Motion for Leave. After considering Plaintiffs' Motions to enforce the parties' mediated settlement agreement ("MSA"), Plaintiffs'

**Memorandum Opinion and Order – Page 2**

Complaint, the parties' briefs, the MSA, the documents that Plaintiffs seek to have Defendants execute, Plaintiffs' evidence of Defendants' default, and the Report, and conducting a de novo review of the portions of the Report to which objection was made, the court, for the reasons set forth **herein**, **accepts as herein modified** the findings and conclusions of the magistrate judge. Specifically, the court **rejects** the magistrate judge's findings and conclusions regarding an agreed judgment; **accepts** the magistrate judge's findings and conclusions that Plaintiffs have not established an uncured default by Defendants; and **accepts** the magistrate judge's findings and conclusions regarding Plaintiffs' request for attorney's fees and sanctions. The court **overrules** Plaintiffs' objections, **sustains** Hackney's objections to the extent that the court concludes that Plaintiffs are not entitled to the relief sought, and **denies** Plaintiffs' Motions (Docs. 100, 115). Additionally, Plaintiffs' request in their objections to submit evidence in support of their request for attorney's fees is **denied.**

## I.     Factual and Procedural Background

On January 12, 2015, Plaintiffs brought this action against Butani Capital Investment Fund II, LLC ("BCIF"); Dinesh K. Butani ("Butani") (collectively, "Butani Defendants"); and Hackney. For purposes of this order, the court refers collectively to the foregoing parties as "Defendants." Plaintiffs also sued MediGain, LLC ("MediGain"), which was dismissed from this action on December 21, 2015, pursuant to an agreed motion.   In their Second Amended Complaint ("Complaint"), Plaintiffs allege that this litigation pertains to certain Asset Purchase Agreements or "APAs" whereby BCIF, as buyer, and MediGain, as guarantor, agreed to purchase substantially all of the assets of medical billing companies MedVision, MediTech, and Phycom.  Plaintiffs allege that Defendants, including Medigain, breached the APAs by failing to make required scheduled payments

and fraudulently induced Plaintiffs to enter the APAs. Plaintiffs' Complaint includes claims against Defendants for breach of contract (BCIF); common law fraud (BCIF, Hackney, Butani); statutory fraud (BCIF, Hackney, Butani); negligent misrepresentation (BCIF, Hackney, Butani); breach of guaranty (Hackney, Butani); conspiracy (BCIF, Hackney, Butani); and breach of fiduciary duty (BCIF, Hackney, Butani). Plaintiffs also requested relief against BCIF under the equitable theories of money had and received, restitution, and unjust enrichment, and sought to recover economic damages, exemplary damages, an accounting, a constructive trust, disgorgement of monies and profits received by Defendants, attorney's fees, interest, and costs.

On November 4, 2015, Plaintiffs and Defendants participated in mediation and reached what the parties refer to as a "Mediated Settlement Agreement" or "MSA," which is signed by Plaintiffs and Defendants. Pls.' App. 1-4 (Doc. 102). The MSA includes certain standard typed settlement language, as well as handwritten language regarding the specific terms of the parties' agreement. The MSA provides in pertinent part as follows:

### Settlement Agreement

On this 4th day of November, 2015, [Plaintiffs and Defendants] met in mediation in the matter of: MedVision, Inc. et al. v. MediGain, LLC, et al., Case No. 3:15-CV-00077-L and settled all matters in controversy between and among the parties whose signature appear below. All parties acknowledge that: (1) they freely participated in the mediation process; (2) they enter[ed] into this settlement agreement in good faith; (3) they relied upon their own good judgment and independent legal advice of their own counsel and not on the representation, if any, of the mediator; and (4) that no coercion, duress or undue influence was used by any party, attorney, or mediator to obtain their signature and consent to settle this matter on the following terms:

1. Parties to request administrative closure of case within 3 days after final Settlement Agreement executed.

2. Settlement Payment made specifically for breach of contract claims against [BCIF] and breach of guaranty claims against . . . Hackney and . . . Butani. In consideration for the Settlement Payment, and other good and valuable consideration, the parties to this [MSA] release all claims as set forth in Paragraph 7 below.

3. Total payment of $850,000 (the "Settlement Payment") by [BCIF], . . . Hackney, and/or . . . Butani, as follows:

   (a) $50,000 on or before Jan. 15, 2016;

   (b) $50,000 on or before May 15, 2016; and continuing $50,000 per month on the 15th of each month thereafter for sixteen months. . . ($8[5]0,000 in total monthly payments).  This payment obligation by Defendants is joint and several.[2]

4. Secured by an Agreed Judgment in favor of . . . Alston and . . . Wang, individually, against BCIF, . . . Hackney, and . . . Butani, jointly and severally, in the amount of $850,000 less amounts paid, including interest at the state judgment rate.  Agreed Judgment will include statement that all five Plaintiffs sued and it is agreed that the Agreed Judgment is in favor of Alston and Wang.

5. Maximum of two notices of default and seven calendar day opportunity to cure.

6. In the event of uncured default, Plaintiffs may present Agreed Judgment for entry and Defendants' Notice of Dismissal of Counterclaims with Prejudice. If all settlement funds are paid, Plaintiffs shall file an Agreed Dismissal with Prejudice and return the Agreed Judgment to counsel for [BCIF], Butani, and Hackney.

7. Except for the payment obligations contained herein and the Agreement Judgment, Plaintiffs/Counter-Defendants, on the one hand, and Defendants, on the other hand, including officers, directors, representative, etc. of each, fully and completely mutually release the others (including officers, directors, representatives, etc.) [f]rom any and all claims, liabilities, causes of action, demands, and damages that they have alleged or could have alleged against the other. This includes release of obligations under the APAs and APA Amendments.

8. Mutual [s]tandard confidentiality.

---

[2] The formal unexecuted versions of the MSA that were prepared after mediation similarly include sixteen monthly payments of $50,000, starting May 15, 2016, for a total of $850,000. Although the MSA states that a total of eighteen payments of $50,000 will be made by Defendants, it is clear in interpreting the MSA as a whole that the parties intended that Defendants would make 16 monthly payments of $50,000 for a total payment of $850,000.

**Memorandum Opinion and Order – Page 5**

9. Mutual [n]o admission of liability.

10. Mutual [n]o assignment of claims.

11. All parties bear [their] own costs, and attorney's fees, and expenses in connection with claims against each other.

12. Defendants to file Dismissal of Counterclaims Without Prejudice within 3 business days of for[mal] signed final settlement documents.

13. Mutual standard knowing and voluntary agreement.

14. No unwritten representations, not induced to enter Settlement Agreement by representations by the other parties/their counsel.

15. Governed by Texas law without regard to conflicts of law principles.

16. Applies to successors in interest, purchasers, and assigns.

17. Standard severability provision.

18. Language of Settlement Agreement construed as a whole and not for or against any party hereto.

This settlement agreement is intended to be a full and final settlement agreement containing all material terms even though the parties may prepare a more formal settlement document, release language and dismissal papers, and it is [an] otherwise valid and enforceable agreement.  . . . Butani's counsel will prepare release and dismissal papers and send them to opposing counsel by Nov. 16, 2015.  Signed this 4th day of November, 2015.

Pls.' App. 1-4 (Doc. 102).

By letter dated November 10, 2015, the mediator notified the court that the case had settled, and it was the mediator's understanding that agreed filings would be submitted pursuant to the parties' settlement.  The court, therefore, administratively closed the case on November 12, 2015, and directed the parties to file a stipulation or notice of dismissal or agreed motion to dismiss this action by May 10, 2016.

After the case was administratively closed, the parties, according to Plaintiffs' Motion, undertook efforts through their counsel to "finalize their settlement with formal settlement documentation." Pls.' Mot. 2. The parties' efforts in this regard, however, were stymied when they were unable to agree whether certain additional language should be included in the final versions of the MSA and, in particular, the "Agreed Judgment" referenced in the MSA, based on the parties' respective understandings of the MSA. Plaintiffs' Motions to enforce the MSA (Docs. 100, 115) followed on December 31, 2015, and January 21, 2016, respectively, and the Butani Defendants and Hackney filed responses in opposition to the motions.

Although styled as Motions to enforce the MSA, the major issue of contention is the parties' disagreement regarding the scope and substance of the "Agreed Judgment" referenced in the MSA, and whether the MSA required the parties to execute an agreed judgment and other formal documentation to finalize the parties' settlement. During the course of the parties' briefing, Plaintiffs also asserted that Defendants had failed to make payments as required by the MSA. The briefing with respect to these motions and related motions filed by the parties was completed on September 20, 2016, including their briefing regarding objections to the magistrate judge's findings and recommendation. For the reasons herein explained, the court concludes that Plaintiffs are not entitled to the relief requested.

## II.    Plaintiffs' Motions and Requested Relief

### A.    Original Motion to Enforce MSA (Doc. 100)

In their Motion, Plaintiffs contend that Defendants breached the MSA by failing to finalize and execute "formal settlement documents" and an agreed judgment in accordance with the MSA. Pls.' Mot. 2-3. Plaintiffs contend that the withdrawal of Defendants' counsel "is yet another tactic

by these Defendants to delay the finalization of formal settlement documents and to delay the required and agreed performance of these same Defendants under the terms of their [MSA]." *Id.* at 3. Plaintiffs, therefore, assert that they had no option but to file their Motion to enforce the MSA, "as they have worked diligently over a more than reasonable period of time to get these Defendants to cooperate and finalize the settlement consistent with the terms of the [MSA], to no avail." *Id.* In addition, Plaintiffs express concern regarding deadlines included in the MSA for Defendants' payment obligations:

> Despite the passage of almost two months since mediation, repeated and constant attempts by Plaintiffs' counsel to secure the cooperation and attention of these Defendants and their counsel to finalize their settlement with formal settlement documentation, and rapidly approaching obligations on the part of these Defendants, Defendants have now, at the eleventh hour, inserted and insist upon language in an Agreed Final Judgment which was not contemplated by the parties in the mediated settlement agreement and which is not agreeable to Plaintiffs.

*Id.* at 2.  Plaintiffs request that the court enter an order enforcing the MSA by requiring Defendants to:

> execute the formal settlement documents which have been agreed upon by these parties [App. 118-125; 174-204], as modified by the additional previously agreed upon but unincorporated changes as noted in Plaintiffs' counsel's email of December 22, 2015 [App. 222] and that the Court further Order these Defendants to execute the Agreed Final Judgment proposed by Plaintiffs [App. 233-242] or otherwise enter a Final Judgment consistent with the mediated settlement agreement providing the relief to which Plaintiffs are entitled and to which Defendants agreed.

Pls.' Mot. 3; Pls.' Reply in Support of Mot. 5 (Doc. 137). Plaintiffs contend that "Defendants misrepresent that Plaintiffs seek to have the Court order Defendants to sign an agreed judgment [that] would be a judgment on all causes of action." Pls.' Reply 4 (Doc. 137).  Plaintiffs assert that, although their proposed agreed judgment lists all of the claims and counterclaims asserted by the parties in this case, it "does not make a specific finding as to any cause of action." *Id.*

Alternatively, Plaintiffs request that the court enforce the MSA as written. Plaintiffs contend that Defendants should be required to execute an agreed judgment at this time because "[a]n Agreed Judgment was obviously agreed upon by the parties and is a material part of the MSA." *Id*. Plaintiffs contend that an agreed judgment "was to be prepared contemporaneously with the formal settlement documents since it is the security for the settlement payments and [was ] to be entered in the event of an uncur[]ed default." *Id*. Plaintiffs also request that the court "extend the administrative closure of this case and otherwise retain jurisdiction until such time as Motions are filed dismissing all claims and all parties and/or a final judgment is entered, and if same becomes necessary, to enforce any final judgment." *Id.* at 9.

### B.     Supplemental Motion to Enforce MSA

Three weeks after Plaintiffs filed their Motion, and after the magistrate judge extended Defendants' deadline to respond to the Motion over Plaintiffs' opposition, Plaintiff sought and was granted leave to file their Supplemental Motion. In their Supplemental Motion, Plaintiffs repeat their contentions regarding Defendants' allegedly improper failure and refusal to comply with the MSA by delaying in finalizing and executing formal settlement documents, including Plaintiffs' proposed agreed judgment. Plaintiffs also repeat their concern regarding Defendants' "rapidly approaching payment obligations" under the MSA. Pls.' Supp. Mot. 2.

Plaintiffs further assert for the first time in their Supplemental Motion that Butani breached the confidentiality provision of the MSA by disclosing terms of the MSA to Ian Maurer ("Maurer"), the chief information officer of Medigain. In an affidavit, Maurer states that, on January 2, 2016, Butani told him that (1) he was not going to pay his half of the settlement with Plaintiffs; and (2) Hackney had told Butani that Hackney was not going to pay his share of the settlement. Plaintiffs

contend that Maurer's affidavit is newly discovered evidence that "confirm[s] material breaches of the confidential [MSA] and the stated intent of these Defendants to not comply with their significant payment obligations to which they agreed." Pls.' Supp. Mot. 5.  In addition to the relief requested previously in their Motion, Plaintiffs' Supplemental Motion includes a new request for an award of "attorney's fees and/or sanctions" against Defendants for their "willful and intentional breaches of confidentiality and . . . their purposeful delays and now expressed intent to not comply with their payment obligations under the [MSA]."  *Id.* at 6.  Plaintiffs also requested an expedited ruling on their Motions because "the payment obligations required by Defendants under the . . . [MSA] are imminent and the failure of Defendants to make a payment will cause immediate and irreparable harm to Plaintiffs."  *Id.* at 7.

By electronic order, the magistrate judge denied without prejudice the Supplemental Motion, to the extent Plaintiffs requested an expedited ruling on their Motions, and advised that his findings and recommendations would be issued with respect to both Motions after briefing on the motions was complete.[3]

## III.    Defendants' Responses in Opposition to Plaintiffs' Motions

Defendants acknowledge that the MSA is enforceable, but they oppose Plaintiffs' request for the court to enforce the MSA by requiring them to execute the agreed judgment proposed by Plaintiffs.  Defendants contend that Plaintiffs have not cited to any authority that would allow the court to force Defendants to execute an agreed judgment that includes terms to which they did not consent in mediation.  Defendants contend that, because the MSA states that Defendants' settlement

---

[3] Although the Report references only Plaintiffs' Motion (Doc. 100), the court treats the Report as the magistrate judge's recommended disposition for both of the Motions filed by Plaintiffs, as it is clear from the magistrate judge's electronic order that any findings and recommendations by him would address both Motions.

**Memorandum Opinion and Order – Page 10**

payment is made for Plaintiffs' breach of contract and guaranty claims, any agreed judgment should also be limited to these claims. Defendants contend that, in any event, execution and entry of an agreed judgment is premature because there has been no default to date by them in making payments under the MSA.

The Butani Defendants, joined by Hackney, initially asserted that, while the MSA contemplates preparation and execution of an agreed judgment at some time in the future, there was no meeting of the minds regarding the terms of any judgment other than the amount. Defendants, therefore, assert that the MSA, as it pertains to the parties' agreement to execute an agreed judgment, is ambiguous, and the language in the MSA regarding execution of a future agreed judgment should be severed out under the MSA's severability clause. In a subsequent amended response, Defendants contend that the parties' agreement in the MSA with respect to the terms to be included in a future agreed judgment is unambiguous such that the court should not consider the correspondence submitted by Plaintiffs in support of their motions. Defendants continue to maintain that Plaintiffs' proposed agreed judgment, which includes all claims asserted in this action, including breach of contract, specific performance, accounting, money had and received, restitution, unjust enrichment, common law fraud, statutory fraud, negligent misrepresentation, breach of guaranty, fraud by nondisclosure, rescission, conspiracy, breach of fiduciary duty, exemplary damages, constructive trust, disgorgement, and attorney's fees, is inconsistent with scope of the agreed judgment contemplated by the MSA, and would require the court to impermissibly supply terms or conditions not previously agreed to by the parties in the MSA, although the MSA provides that it contains the parties' entire agreement. The Butani Defendants further assert that the MSA merely contemplates that an agreed judgment would be prepared and executed by the parties at some time in the future.

IV.     **The Magistrate Judge's Report and Recommendation**

The parties' dispute focuses in large part on the scope and substance of the "Agreed Judgment" referenced in the MSA. Based on the MSA, Plaintiffs contend the parties agreed that the "Agreed Judgment" would apply to any and all claims that were asserted or could have been asserted in this case. Defendants, on the other hand, contend that, because the parties agreed in the MSA that Defendants' Settlement Payment was being made specifically for Plaintiffs' breach of contract and guaranty claims, they intended that any agreed judgment in favor of Alston and Wang in the event of Defendants' breach would be similarly limited to these claims, notwithstanding the parties' separate agreement in the MSA to mutually release any and all claims against each other in consideration for the Settlement Payment by Defendants.

The magistrate judge rejected Defendants' interpretation of the MSA, as it pertains to the scope of the "Agreed Judgment" referenced in the MSA, and recommended that the court grant Plaintiffs' motions and enter an order requiring Plaintiffs:

> to file an Agreed Dismissal with Prejudice and return the Agreed Judgment to defense counsel upon fulfillment of all payment obligations, or present an Agreed Judgment that is consistent with Paragraph 4 of the parties' Settlement Agreement, along with Defendants' Notice of Dismissal of Counterclaims with Prejudice, if an uncured default has occurred.

Report 8. The foregoing recommendation was provided in the alternative because it was unclear to the magistrate judge whether an "uncured default" of the MSA had occurred as contended by Plaintiffs. *Id.* at 5 ("As previously discussed, Defendants contend that they are not in default, because they made their January 2016 payment in accordance with the payment schedule in Paragraph 3 of the [MSA]. Further, while Plaintiffs state that Defendants expressed their intent not to comply with the payment schedule, Plaintiffs' Reply does not dispute Defendants' contention that

they timely made their January 2016 payment and are not in default. Therefore, it is unclear to the undersigned whether [an] 'uncured default' has occurred." *Id.* at 8.

Regarding Plaintiffs' request for "attorneys' fees and/or sanctions for Defendants' breaches of confidentiality, purposeful delays, and expressed intent not to comply with their payment obligations," the magistrate judge recommended that the court deny the request because it was raised for the first time in Plaintiffs' reply brief, and Plaintiffs failed to set forth any legal authority to support the request. *Id.* at 7.

## V.   Standard of Review

A magistrate judge's determination regarding a dispositive matter is reviewed de novo if a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   A magistrate judge's determination regarding a nondispositive matter is reviewed under the "clearly erroneous or contrary to law" standard.   28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). As explained by the court in *Arters v. Univision Radio Broadcasting TX, L.P.*, No. 3:07-CV-0957-D, 2009 WL 1313285 (N.D. Tex. May 12, 2009):

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in [his] legal conclusions.   [T]he abuse of discretion standard governs review of that vast area of choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.

*Id.* at *2 (citations and internal quotation marks omitted).   As Plaintiffs seek to enforce a mediated settlement agreement and have requested that the court require Defendants to execute an agreed

judgment that not only disposes of the claims in this case, but will also be a judgment against Defendants in the event any of them breaches the MSA, their motions are dispositive and will be reviewed de novo.

## VI. Objections Regarding Enforcement of the MSA (Execution of Agreed Judgment and Other Formal Documents)

### A.  The Parties' Arguments

Hackney continues to maintain in his objections to the Report that Plaintiffs' proposed agreed judgment exceeds what was agreed to in the MSA, and he cites Texas authority for the following propositions: (1) "A court's power to render an agreed judgment is based on the existence of the consent of all parties at the time of rendition of the judgment, and a party may withdraw his consent at any time prior to the time of rendition"; and (2) "A final judgment which is founded upon a settlement agreement must be in strict or literal compliance with that settlement agreement."). Hackney's Obj. 9 n.32 (quoting *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976); and *Grasso v. Ellis*, 608 S.W.2d 347, 349 (Tex. App.—San Antonio 1980, no writ)). Hackney further asserts that, under Texas law, Plaintiffs' Motion is procedurally improper such that Plaintiffs should be required to pursue enforcement of the MSA through a separate breach of contract claim that would be subject to normal rules of pleading and proof.  Alternatively, Hackney asserts that the MSA is ambiguous regarding the scope and substance of any "Agreed Judgment."

Hackney argues that, regardless of whether Plaintiffs' Motion is procedurally proper, he has not agreed to Plaintiffs' version of the "Agreed Judgment." In this regard, Hackney clarifies that he is not challenging, and has not challenged, the validity or enforceability of the [MSA]." Hackney's Reply in Support of Obj. 1 (Doc. 157).  He instead challenges the entry "of an agreed judgment, or

**Memorandum Opinion and Order – Page 14**

consent judgment, to which he has not agreed." *Id.* (footnote omitted).  Hackney contends that he

and Plaintiffs "did not enter into an 'Agreed Judgment' as anticipated by the MSA because they were

unable to reach agreement as to the scope and substance of the agreed judgment." *Id.* at 1-2.

Specifically, Hackney contends:

> Plaintiffs and Hackney disagree as to whether the "Agreed Judgment" applies only
> to the breach of guaranty claim against Hackney – as Hackney contends – or to all
> claims Plaintiffs asserted in their Second Amended Complaint – as urged by
> Plaintiffs. To the extent that Magistrate Judge Stickney concluded or this Court
> concludes that Hackney did agree to the "Agreed Judgment" proposed by Plaintiffs,
> such consent or agreement has been and is hereby <u>revoked</u>.

*Id.* at 1-2 & n.2 (Doc. 157) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 268 (5th

Cir. 1995), for the proposition that "revocation of consent prior to entry of an agreed judgment has

the effect of voiding the judgment under Texas law")).

Plaintiffs do not address Hackney's revocation of any agreed judgment or the effect of such

revocation under Texas law.  Plaintiffs disagree that Texas's procedural rules apply to the

enforcement of a settlement agreement in federal court and contend that the Report should be

adopted to the extent it recommends that the court should grant Plaintiffs' Motion.  In addition,

Plaintiffs contend that the court should not consider Hackney's procedural and ambiguity arguments

because they were not presented to the magistrate judge, and Hackney's objections ignore established

precedent in the Fifth Circuit and the cases cited by Plaintiffs regarding a district court's inherent

power and discretion to enforce a settlement agreement when one party in a civil action initially

agrees to settle but later refuses to execute a formal agreement reciting the terms of the settlement.[4]

---

[4] Pls.' Resp. to Hackney's Obj. 6 (Doc. 150) (citing *Chen v. Highland Capital Mgmt., L.P.*, Case No. 3:10-CV-
1039-D, 2012 WL 5935602 (N.D. Tex. Nov. 27, 2012); and *Weaver v. World Fin. Corp. of Tex.*, No. 3:09-CV-1124-G,
2010 WL 1904561 (N.D. Tex. May 12, 2010).  Plaintiff also relies on this court's opinion in *International Truck and
Engine Corporation v. Quintana* but miscites the opinion. The correct citation is *International Truck and Engine
Corporation v. Quintana*, Case No. 3:02-CV-168-L, 2004 WL 1380181 (N.D. Tex. June 18, 2004).

Plaintiffs' response to Hackney's objections also includes the following conclusory statement: "Plaintiffs hereby notify the Court that **Defendants are in uncur[]ed default of the MSA** and judg[]ment should be entered against them, jointly and severally, in the amount of $700,000 without further delay" because of "Defendants['] uncur[]ed default of the MSA and Hackney's asserted intent not to pay Plaintiffs pursuant to the very MSA he signed."  Pls.' Resp. 3 (emphasis in original).

Plaintiffs continued to contend that, contrary to Hackney's assertions, they are not requesting the court to order Defendants to sign an agreed judgment that would be a judgment on all causes of action because their proposed agreed judgment makes no specific finding as to any cause of action. Plaintiffs contend that it is instead Hackney who is demanding that the court enter an agreed judgment that includes specific language limiting the judgment to Plaintiffs' breach of contract and beach of guaranty claims, even though the MSA does not state that the "Agreed Judgment" would be limited as such.

Plaintiffs assert that the language proposed by Hackney for inclusion in the Agreed Judgment would impermissibly narrow the scope of the Agreed Judgment that was given as security in the event Defendants fail to make payments under the MSA or is an attempt by Hackney to evade the judgment through bankruptcy:

> Hackney asks the Court to add language to the MSA and require the Agreed Judgment to be entered only on the contract claims, and to exclude the other claims that were asserted in the lawsuit. Hackney's request would require this Court to materially change the terms of the parties' agreement and weaken the judgment given as security for breach. The Magistrate Judge properly refused to rewrite the MSA in favor of Hackney.

**Memorandum Opinion and Order – Page 16**

Pls.' Reply 6-7 (Doc. 158). Plaintiffs, therefore, request that the court "order specific performance of the Defendants' contractual obligation to sign an Agreed Judgment" based on their contention that "[s]pecific performance of a mediated settlement agreement is an appropriate remedy." *Id.* at 7. Plaintiffs assert that they do not object to the Report to the extent it recommends that Plaintiffs' Motion be granted. Pls.' Obj. 1-2 (Doc. 142).

Plaintiffs, however, seek clarification or object to the Report to the extent that the magistrate judge "did not recommend that the District Court also Order . . . Defendants to execute the Agreed Judgment and . . . Defendants' Notice of Dismissal of Counterclaims with Prejudice which will be presented to Defendants due to their uncur[]ed default" because Defendants have not actually signed any formal Agreed Judgment or Defendants' Notice of Dismissal of Counterclaims with Prejudice (although the terms of such Dismissal of Counterclaims were agreed)." *Id.* at 3-4. Plaintiffs further contend that, "as Defendants are in default of their payment obligations under the mediated settlement agreement, [Plaintiffs] should, consistent with the [Report], be permitted to present an Agreed Judgment for entry along with Defendants' Notice of Dismissal of Counterclaims with Prejudice." *Id.*

Plaintiffs do not specifically object to the magistrate judge's finding that the record does not support a determination that an uncured default by Defendants has occurred, and they acknowledge that "[t]he "Butani Defendants were correct in their Response and Amended Response to Plaintiffs' Motion to Enforce that Defendants were not in default under the MSA's payment terms as of February 12, 2016 (the date the Amended Response was filed)." Pls.' Reply 6 n.6 (citation omitted). Plaintiffs, however, continue to contend that Defendants have breached the MSA by failing to perform their payment obligations and "note for the Court's information that, as a factual matter,

Defendants have since defaulted on their payment obligations under the MSA." *Id.* Plaintiffs, therefore, contend that, "as Defendants are in default of their payment obligations under the [MSA], [Plaintiffs] should, consistent with the [Report], be permitted to present an Agreed Judgment for entry along with Defendants' Notice of Dismissal of Counterclaims with Prejudice." Pls.' Obj. 3.

### B.     Applicable Law and Analysis

As noted, Plaintiffs have moved to enforce the MSA to require Defendants to execute formal documentation in accordance with the MSA, including their proposed version of an agreed judgment. Plaintiffs also contend that judgment in accordance with the MSA should be entered in their favor as a result of Defendants' allegedly uncured default in failing to make required payments under the MSA.

While "federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally." *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (per curiam) (quoting *Lee v. Hunt*, 631 F.2d 1171, 1173-74 (5th Cir. 1980) (footnote omitted). "More specifically, the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the provisions of Rule 11, Texas Rules of Civil Procedure ('Texas Rule 11')." *Borden v. Banacom Mfg. and Mktg., Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988) (citing *Anderegg v. High Standard, Inc.*, 825 F.2d 77, 80-81 (5th Cir. 1987)). Texas substantive law applies to Plaintiffs' Motions to enforce the MSA because this is a diversity case involving state law claims, *Lockette*, 817 F.2d at 1185, not substantive rights or liabilities under federal law. *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Although Texas Rule 11 is a Texas Rule of Civil Procedure, it is considered to be substantive in

nature in the same way Texas's parol evidence rule is a rule of substance and, therefore, applies to Texas diversity cases that are tried in federal court. *Anderegg*, 825 F.2d at 80-81. To be enforceable under Rule 11, the settlement must be documented, that is, the settlement agreement must be "in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." *Lefevre v. Keaty*, 191 F.3d 596, 598 (5th Cir. 1999) (quoting Tex. R. Civ. P. 11). In addition, the trial court "must render judgment by officially announcing its decision in open court or filing a written order with the clerk." *Lefevre*, 191 F.3d at 598 (citing *Anderegg*, 825 F.2d at 80); *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874 (Tex. 1982) ("A judgment is in fact rendered whenever the trial judge officially announces his decision in open court . . . whether orally or by written memorandum.") (citation omitted).

"Until the court renders judgment, either party may revoke the settlement." *Lefevre*, 191 F.3d at 598 (citing *S & A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995)). A "court cannot render a valid agreed judgment absent consent at the time it is rendered." *Padilla*, 907 S.W.2d at 461. "[N]otwithstanding a valid Rule 11 agreement, consent must exist at the time an agreed judgment is rendered." *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984). "It is not sufficient to support the judgment that a party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court." *Burnaman v. Heaton*, 240 S.W.2d 288, 291 (Tex. 1951). "[A] party has the right to revoke his consent at any time before the rendition of judgment." *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983). As noted, judgment is rendered with respect to a Rule 11 settlement agreement when the trial court "officially announces its decision in open court or by written memorandum filed with the clerk." *Leal*, 892 S.W.2d at 857 (citation omitted). A judgment rendered

**Memorandum Opinion and Order – Page 19**

after one of the parties revokes its consent is void. *Id.*; *Samples Exterminators*, 640 S.W.2d at 874-75. "Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement." *Padilla*, 907 S.W.2d at 461. As explained by the Texas Supreme Court in *Padilla*, "[t]he judgment in the latter case is not an agreed judgment, but rather is a judgment enforcing a binding contract." *Id.*

Under Texas law, the enforceability of a settlement agreement is a question of law for the court unless there is ambiguity or surrounding facts and circumstances demonstrate the existence of a factual issue regarding the agreement. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013); *General Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Corpus Christi 2014, no pet.) ("The issue of whether a Rule 11 settlement agreement fails for lack of essential terms is a question of law to be determined by the court, unless there is ambiguity or unless surrounding facts and circumstances demonstrate a factual issue as to an agreement.") (citation omitted). "A [federal] trial court has the power to summarily enforce a settlement agreement entered into by litigants while the litigation is pending before it," as long as material facts regarding the existence of an agreement to settle are not in dispute. *Massachusetts Cas. Ins. Co. v. Forman*, 469 F.2d 259, 260 (5th Cir. 1972) (per curiam) (citation omitted). Thus, when material facts concerning the existence of a settlement agreement are in dispute, a district court cannot enter an order without a plenary hearing. *Borden*, 698 F. Supp. at 123 n.1 (citing *Lee*, 631 F.2d at 1177).

A settlement agreement is "legally binding if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000).  Likewise, settlement agreements to enter into future contracts are enforceable if they contain all material or essential terms, and no terms of the proposed agreement are left for future negotiations.  *McCalla*, 416 S.W.3d at 418; *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846 (citations and footnote omitted). The issue of whether a settlement agreement contains all material terms is "determined on a case-by-case basis." *McCalla*, 416 S.W.3d at 418 (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)).

 A settlement agreement is a contract, subject to the applicable rules of contract construction and interpretation.  *Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912 (5th Cir. 2013) (citing *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992)).Whether a contract is ambiguous under Texas law "is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).  Lack of clarity does not create an ambiguity, and "[n]ot every difference in the interpretation of a contract . . . amounts to an ambiguity." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994); *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003).  Rather, an ambiguity arises when an agreement is susceptible to more than one reasonable meaning after application of established rules of construction. *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

The "primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*,

207 S.W.3d 342, 345 (Tex. 2006). To achieve this objective, the court examines "the entire writing in an effort to harmonize and give effect to all the contract's provisions so that none will be rendered meaningless." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). No single provision taken alone should be given controlling effect; "rather, all the provisions must be considered with reference to the whole instrument." *Coker*, 650 S.W.2d at 393.   If a contract is worded in such a manner that it can be given a certain or definite legal meaning, it is not ambiguous, and it is construed as a matter of law according to the plain meaning of its express wording and enforced as written. *DeWitt Cnty. Elec. Coop., Inc.*, 1 S.W.3d at 100; *Coker*, 650 S.W.2d at 393.

An agreed judgment is interpreted in the same manner as a contract.  *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). An agreed judgment, however, is a final judgment on the merits and operates to end all controversy between the parties.  *St. Raphael Med. Clinic, Inc. v. Mint Medical Physician*, 244 S.W.3d 436, 439 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Consequently, an agreed judgment that "is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement." *Vickrey*, 532 S.W.2d at 292 (citation omitted).

Here, Plaintiffs and Defendants do not contend that the MSA is unenforceable as written, although Defendants initially contended that there was no meeting of the minds as to the terms of an agreed judgment.[5]  They instead request that the court enforce the MSA as written and simply dispute whether their respective proposed versions of the agreed judgment are consistent with the

---

[5] This contention by Defendants, which was included in their original response to Plaintiffs' Motion, was superseded by the arguments in their amended response.

**Memorandum Opinion and Order – Page 22**

MSA and whether the execution of an agreed judgment and other documents is necessary to finalize the parties' mediated settlement.

> **1.     The MSA is Enforceable as Written Without the Execution of Other Documents or Formal Documentation.**

Although Plaintiffs express concern that Defendants have delayed or refused to execute "formal documentation" to avoid or delay performance under the MSA, the court concludes that the the MSA is enforceable as written.  The documentation requirements for Rule 11 have been satisfied, as the MSA is in writing, is signed by all parties to the agreement, and was filed together with Plaintiffs' Motion.  The MSA does not indicate that any other terms remain open for future negotiation; nor does it state that the parties' performance under the agreement or enforcement of the agreement is contingent upon the execution of additional formal documents.  Instead, the MSA expressly states that it is a "valid and enforceable agreement" and "intended to be a full and final settlement agreement containing all material terms even though the parties *may* prepare a more formal settlement document, release language and dismissal papers."  Pls.' App. 2 (Doc. 102) (emphasis added).

Additionally, the material terms of the parties' agreement are set forth in sufficient detail for the court to determine the parties' obligations.  Specifically, paragraph three of the MSA states that, in consideration for Defendants' agreement to pay a total Settlement Payment of $850,000, to be paid in monthly installments of $50,000, the parties to the agreement "fully and completely[,] mutually release" all claims asserted or that could have been asserted in this action by them, except for Defendants' payment obligation under the MSA. *Id.* at 4.  The next paragraph of the MSA states that the Settlement Payment is "[s]ecured by an Agreed Judgment in favor of Ken Alston and Alex

Wang" against Defendants, jointly and severally, in the amount of $850,000, less any payments made by Defendants toward this amount, and that interest on the judgment will accrue at the state judgment rate. *Id.* at 3. The MSA further provides that, in the event of default, Defendants will be given a maximum of two notices of default and seven calendar days to cure any default, and if the default goes uncured, "Plaintiffs may present Agreed Judgment for entry."

Because the MSA contains the total amount of the Settlement Payment owed by Defendants and the terms of the payments to be made by Defendants, and includes a complete and mutual release of all claims asserted or that could have been asserted by the parties in this action, exclusive of Defendants' payment obligations, the court concludes that the MSA contains all material terms and is enforceable as written, without the need for additional formal documentation. Further, the MSA makes clear that, in the event of an uncured default by Defendants of their payment obligations, Plaintiffs are entitled to present an agreed judgment, which according to the MSA, is security for such payments; and the agreed judgment will be "in favor of Alston and Wang" in the total amount of $850,000, less any amounts paid, and interest on the judgment will accrue at the state judgment rate. *Id.* at 3.

That the parties may have contemplated executing more formal documentation of their settlement agreement, agreed upon releases, agreed judgment, or other dismissal papers does not make their agreement any less enforceable. *See Padilla*, 907 S.W.2d 454, 460-61 (Tex. 1995) (concluding that agreement was complete where terms included agreement to pay in exchange for settlement); *Disney v. Gollan*, 233 S.W.3d 591, 595 (Tex. App.—Dallas 2007, no pet.) (concluding that essential terms for a settlement agreement are the amount of compensation and the liability to be released); *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex.

**Memorandum Opinion and Order – Page 24**

App.—Fort Worth 1999, no pet.) (holding a settlement agreement that includes the terms of payment and releases contained all material terms); *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (concluding that settlement agreement involving the settlement of a lawsuit and sale of real property was enforceable, as it contained all material terms, including a general release, a description of the real property to be sold, the timeline for closing the real property sale, the identities of the transferor and transferee of the real property, and the price of the real property, and did not leave open any terms for future negotiation).

Accordingly, this is not a situation in which essential terms of a settlement agreement were left open for future negotiation. Moreover, the MSA does not indicate that its enforcement, the parties' mutual releases, or the parties' performance under the MSA are contingent upon the execution of additional formal documents; nor does the MSA state that the parties' mutual releases of claims are contingent upon Defendants' future performance of their payment obligations under the MSA. Thus, even if the parties contemplated preparing and executing formal documentation, the MSA is enforceable as written without the need to execute additional documents. Further, except for a couple of minor inconsistencies in the MSA that are discussed below that do not affect its validity or enforceability, the court concludes that the language of the MSA is not ambiguous, as it can be given a certain or definite meaning as a matter of law, notwithstanding the parties' disagreement regarding its meaning. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). The court must, therefore, enforce it as written without considering parol evidence. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450-51 (Tex. 2008) (per curiam).

**2.      Defendants' Failure to Execute Formal Settlement Documents is Not a Breach of the MSA.**

The court disagrees with Plaintiffs' contention that Defendants were required under the MSA to execute formal settlement documents and breached the MSA by failing to execute such documentation.   Other than an agreed judgment, Plaintiffs do not specify in their Motions which settlement documents they believe Defendants were required but failed to execute.   Instead, they cite to pages 118 through 125, and 174 through 204 of their appendix.

**a.      Agreed Motion to Extend Administrative Closure and Dismissal of this Case**

Pages 118 through 125 consist of an unexecuted "Joint Agreed Motion to Extend Administrative Closure and Advisory to the Court Regarding Settlement" and a proposed agreed order granting the joint motion.   In this motion, the parties notify the court of their settlement and request that the court extend the administrative closure of the case and their May 10, 2016 deadline to file a joint stipulation or motion to dismiss this action to October 31, 2017, which is a little more than two months after Defendants' last payment under the MSA would be due.   The motion further requests that the court retain jurisdiction until "such time as Motions are filed dismissing all claims and all parties and/or a final judgment i[s] entered, and if same becomes necessary, to enforce any final judgment or to grant other relief."   Pls.' App. 119.

The MSA does not require the parties to notify the court of their settlement.   Moreover, the mediator had already notified the court that the parties had settled, which is why the court set a deadline for the parties to file a joint stipulation, notice of dismissal, or agreed motion to dismiss this case.   Likewise, the MSA does not require the parties to execute an agreed joint motion to extend the administrative closure and delay dismissal of this case; rather the MSA merely states: "Parties

Memorandum Opinion and Order – Page 26

to request administrative closure of case within 3 days after final Settlement Agreement executed."
Pls.' App. 3.   Even assuming as Plaintiffs contend that this language in the MSA required
Defendants to execute an agreed motion to administratively close the case, this issue was mooted
by the court's administrative closure of the case after being notified that the case had settled.
Additionally, the court vacated the May 10, 2016 deadline to file a stipulation of dismissal or agreed
motion to dismiss pending resolution of Plaintiffs' motions to enforce the mediated settlement,
which mooted any issue regarding the extension of the administrative closure or delay in dismissing
this case, at least for the time being until the court ruled on Plaintiffs' motions.  Order (Doc. 139).
Further, this provision in the MSA makes the request to administratively close the case contingent
on the execution of a "final Settlement Agreement" by the parties, which has not yet occurred and
is not required by the MSA, as it states only that the parties "*may* prepare a more formal settlement
document."  Pls.' App. 2 (emphasis added).

Regardless of any agreement by the parties, the court would not agree to delay the dismissal
of this case for more than a year until some time after Defendants' last payment deadline under the
MSA because, as herein explained, it is not necessary to effectuate the parties' settlement and
dismissal of the claims asserted in this case pursuant to the MSA, as the MSA does not condition
the release or settlement of the claims asserted by the parties on Defendants' performance of its
payment obligations under the MSA.  Moreover, extending the administrative closure and delaying
the dismissal of this case is not necessary for purposes of enforcing the parties' settlement, which
can be done, if necessary, after dismissal of this action either by this court, if it retains jurisdiction
to enforce the parties' settlement, or another court with jurisdiction.

Finally, the MSA does not include an agreement by the parties for the court to retain jurisdiction and, as the court explains below, any request for it to retain jurisdiction to enforce the parties' settlement or any judgment entered in this case is premature, as no order of dismissal or judgment has been entered in the case to date.  Accordingly, Defendants did not breach their obligations under the MSA by failing to execute this motion and proposed order.

### b.      Compromise Settlement Agreement with Mutual Releases

In support of their Motions, Plaintiffs provided copies of two unexecuted formal versions of the MSA titled Compromise Settlement with Mutual Releases and request that the court require Defendants to execute the version included in pages 194 through 204 of Plaintiffs' appendix. The most notable differences between the two versions are that the version that Plaintiffs seeks to have Defendants execute would only require Defendants to dismiss without prejudice their claims as a result of the settlement, whereas the other version requires both parties to dismiss without prejudice their claims as a result of the settlement, although the parties mutually released all claims against each other under the MSA, except for Defendants' payment obligation.  The version that Plaintiffs seek to have Defendants execute also includes an additional paragraph that requires the parties to execute, as necessary, additional documents to further the purpose of the Compromise Settlement with Mutual Releases.  The version advocated by Plaintiffs also states that Defendants "shall execute and deliver to Plaintiffs' counsel" an agreed judgment "[c]ontemporaneously" with the Compromise Settlement with Mutual Releases, although the MSA does not include a deadline or specifically require Defendants to execute an agreed judgment prior to an uncured default.  *See* Pls.' App. 196. The other version merely states that Defendants "will execute and deliver to Plaintiffs' counsel" an agreed judgment without setting forth a deadline, although the MSA does not include a deadline or

specifically require Defendants to execute an agreed judgment prior to an uncured default.  *See id.* at 23.

In any event, as noted above, the MSA does not require the parties to execute a formal version of the MSA or settlement document.  It states only that the parties "*may* prepare a more formal settlement document, release language and dismissal papers," even though their settlement as set forth in the MSA "is intended to be a full and final settlement containing all material terms" and "otherwise valid and enforceable."  Pls.' App. 2 (emphasis added).  Accordingly, the court concludes that Defendants did not breach their obligations under the MSA by failing to execute the Compromise Settlement with Mutual Releases advocated by Plaintiffs or any formal version of the MSA.

### c.      Agreed Judgment and Motions to Dismiss

Pages 174 through 193 of Plaintiffs' appendix include a red-lined version of an unexecuted Agreed Motion to Dismiss Counterclaims Without Prejudice and a corresponding agreed order granting the motion.  Also included are two copies of an Agreed Motion to Dismiss With Prejudice counterclaims asserted by Defendants in this action and corresponding agreed orders granting the motions.  Plaintiffs contend that Defendants were required under the MSA to execute the motions to dismiss with and without prejudice their counterclaims.  Plaintiffs further assert that the MSA requires Defendants to execute an agreed judgment contemporaneously with the other formal settlement documents.  Plaintiffs, therefore, request that the court require Defendants to execute one of red-lined versions of the "Agreed Judgment" included in pages 233 through 242 of their appendix.

Regarding dismissal, the second page of the MSA states, "Butani's counsel will prepare release and dismissal papers and send them to opposing counsel by Nov. 16, 2015."  Pls.' App. 2.

This portion of the MSA does not specify what is meant by "dismissal papers." Later in the MSA, more specific language is included in paragraph twelve that states, "Defendants to file Dismissal of Counterclaims Without Prejudice within 3 business days of for[mal] signed final settlement documents." *Id.* at 4. This provision in the MSA makes the filing by Defendants of a notice or motion to dismiss without prejudice their counterclaims contingent on the parties' execution of "for[mal] signed settlement documents," which has not yet occurred and is not required under the MSA. *See id.* at 2.

Regarding the dismissal with prejudice of Defendants' counterclaims and agreed judgment, the MSA states in paragraph six that "[i]n the event of uncured default, Plaintiffs may present Agreed Judgment for entry and Defendants' Notice of Dismissal of Counterclaims with Prejudice." *Id.* at 3. Although the MSA states that Defendants' payment obligations are secured by an agreed judgment in favor of Alston and Wang and contemplates that Plaintiffs "may" present an agreed judgment and a notice of dismissal with prejudice of Defendants' counterclaims, no date or deadline for executing these documents is provided. Because presentation of these documents for entry is contingent on an uncured default by Defendants, the court concludes that the MSA does not unambiguously require, as Plaintiffs contend, Defendants to execute an agreed judgment or an agreed motion to dismiss their counterclaims with prejudice at this time to effect the settlement.[6] At most,

---

[6] Plaintiffs assume that, because the MSA states that an agreed judgment would secure Defendants' payment obligations with respect to the "Settlement Payment," it was necessarily contemplated by the parties that an agreed judgment would be executed contemporaneously with other formal settlement documentation and prior to any default by Defendants. This assumption, however, is not supported by the plain language of the MSA. Plaintiffs cite to paragraphs four and six of the MSA, but these paragraphs state only that Defendants' payment obligations under the MSA are secured by an agreed judgment, and Plaintiffs may present an agreed judgment for entry if an uncured default by Defendants occurs. There is no language in the MSA that requires the parties to prepare or execute an agreed judgment by a specific date or prior to an uncured default by Defendants, although the parties could have included language to this effect in the MSA. *See, e.g., Young v. JP Morgan Chase Bank, N.A.*, No. 03-15-00261-CV-2016, WL 4091294, at *1 (Tex. App.— July 28, 2016, pet. ref'd) ("In April 2014, the parties entered into a settlement agreement in which Young agreed to sell or obtain a third party take-out refinance of the debt secured by the Security Instrument

the MSA contemplates that such documents will be executed by the parties after an uncured default occurs.  Further, as herein explained, the MSA contemplates only that the  parties will execute an agreed judgment that comports with the language in the MSA, which is far less expansive than the version of the agreed judgment proposed by Plaintiffs.

The court also notes that the two copies of the Agreed Motion to Dismiss With Prejudice included in Plaintiffs' appendix require Defendants to pay attorney's fees and costs incurred by Plaintiffs in defending against Defendants' counterclaims, which is contrary to the parties' agreement in the MSA that: (1) they would bear their own attorney's fees and costs; and (2) any judgment in favor of Alston and Wang against Defendants as a result of Defendants' uncured default in failing to make payment obligations would be limited to the Settlement Payment of $850,000, less amounts paid by Defendants, plus postjudgment interest at the state judgment rate.  If Plaintiffs wanted to recover attorney's fees and costs previously incurred in defending against Defendants' counterclaims in the event Defendants defaulted on their payment obligations under the MSA, they could have negotiated and included language to this effect in the MSA and reserved in their release of claims a claim for attorney's fees and costs in addition to their claim for Defendants' payment obligations.

In addition, it is unclear how the parties expected to dismiss with prejudice claims that had already been previously dismissed without prejudice.  Unless the claims were subsequently reasserted after being dismissed without prejudice, there would be nothing for the parties or the court

---

'on or before August 1, 2014.' . . . Young also agreed that, if he failed to make the required payment by August 1, 2014, that he would sign and return an agreed judgment for foreclosure 'no later than August 8, 2014.' [After,] Young failed to sell or obtain a third-party take-out refinance by August 1, 2014, [and] Young failed to sign the agreed judgment for foreclosure, JPMC amended its petition to add a claim for breach of the settlement agreement and sought specific performance of the agreement.").  Moreover, the court disagrees with Plaintiffs' contention that the parties' agreement to secure Defendants' payment obligations by an agreed judgment, without more, is necessarily indicative of the parties' intent to prepare or execute an agreed judgment contemporaneously with other formal settlement documentation as opposed to some later point in time, especially when such formal documentation is not required by the MSA. *See id.*

**Memorandum Opinion and Order – Page 31**

to dismiss with prejudice.  In any event, the parties' mutual releases of claims in the MSA indicates an intent by the parties, at a minimum, to dismiss without prejudice their respective claims in this action without the need for further action by them, other than entry of an order dismissing this action and the parties' claims in accordance with their settlement, as required by Rule 11.  *See Lefevre*, 191 F.3d at 598.

For all of these reasons, the court concludes that Defendants did not breach their obligations under the MSA by failing or refusing to execute an agreed judgment and dismissal papers, including the versions of these documents advocated by Plaintiffs.  Accordingly, Plaintiffs' objection that the court should require Defendants to execute formal settlement documents is **overruled**.

### 3.      Plaintiffs Have Not Established an Uncured Default by Defendants.

What started out as a motion to enforce the MSA to require Defendants to execute formal settlement documents evolved into a dispute that also included the issue of whether Defendants had anticipatorily breached the MSA by expressing intent not to make payments or actually breached as the result of an uncured default.  Plaintiffs' unsupported and conclusory assertions and hearsay evidence are insufficient to establish that Defendants anticipatorily breached or actually failed to comply with their payment obligations under the MSA, or that they failed to cure the alleged default after appropriate notice by Plaintiffs. Moreover, the MSA limits entry of an agreed judgment against Defendants to an uncured default with respect to payment obligations, not an anticipatory breach of Defendants' payment obligations or other obligations under the MSA.  Accordingly, Plaintiffs are not entitled to entry of a judgment against Defendants, agreed or otherwise, based on their contention that Defendants breached the MSA by failing to comply with their payment obligations.

### 4.       Plaintiffs' Proposed Agreed Judgment is Inconsistent with the MSA.

For the reasons already explained, execution of and entry of any agreed judgment is premature, as Plaintiffs have not established by competent evidence that Defendants failed to comply with their payment obligations, that Plaintiffs provided the requisite notice of default and opportunity to cure under the MSA, and that Defendants failed to cure any default.   Moreover, as noted, Plaintiffs' proposed agreed judgment is far more expansive than, and in some respects inconsistent with, what the parties agreed to in the MSA.   Regarding an agreed judgment, the MSA merely states that: (1) Defendants' Settlement Payment of $850,000 is secured by an agreed judgment in favor of Alston and Wang in the total amount of $850,000, less any amounts paid by Defendants toward the total amount, plus interest at the state judgment rate; (2) jointly and severally against Defendants; and (3) in the event of an uncured default of Defendants' payment obligations, Plaintiffs may present an agreed judgment for entry.   Plaintiffs' proposed agreed judgment, on the other hand, includes an interest rate of "(56.00%) [sic] per annum" and contains language that would require Defendants to admit to defaulting on their payment obligations and failing to cure after notice by Plaintiffs before any event of uncured default actually occurs.   Consequently, Plaintiffs' proposed agreed judgment alleviates them from having to prove an uncured breach of the settlement agreement by Defendants, although this is not contemplated by the MSA.

Plaintiffs maintain that they are not seeking to have Defendants sign an agreed judgment that would be a judgment on all causes of action asserted in this case, and that their proposed agreed judgment simply lists all claims asserted by the parties without making any specific finding as to any claim; however, the inclusion of all claims asserted by the parties in this case in an agreed judgment, and together with a statement that the judgment "disposes of all remaining claims [in this case],"

Pls.' App. 237, clearly implies that the judgment is in Plaintiffs' favor against Defendants on all claims asserted by the parties in this case, even though all claims by the parties, except for Defendants' payment obligations, were previously released under the MSA, and the MSA indicates only that an agreed judgment was to secure Defendants' payment obligations under the MSA and nothing more.

Thus, as written, Plaintiffs' proposed agreed judgment converts their full, final, and unconditional release of claims in the MSA into a release by Plaintiffs that is contingent upon Defendants satisfying their payment obligations. It also converts the agreed judgment in the MSA that secures only Defendants' payment obligations into an agreed judgment on all claims asserted in this case in the event of an uncured default by Defendants. There is no language in the MSA, however, that indicates the parties' intent to make Plaintiffs' release of their claims subject to or contingent upon Defendants' future performance of their payment obligations under the MSA. Likewise, the MSA does not state that Plaintiffs would be entitled to a judgment on all of the claims in this case, including those previously released, if Defendants fail to satisfy their payment obligations.

If, as Plaintiffs contend that, it is not their intent to seek a judgment on all claims asserted in this case in the event Defendants default on their payment obligations under the MSA, there is no need to include or list in an agreed judgment all claims previously asserted by the parties in this case that were released as part of their settlement. While Plaintiffs assert that they are not seeking a judgment on all previously released claims, it is clear from their objections to Defendants' proposed language that they are in fact seeking an agreed judgment that would extend to claims other than those for breach of Defendants' payment obligations out of concern that they will not be able to

Memorandum Opinion and Order – Page 34

collect on the judgment if Defendants default and seek bankruptcy protection to avoid their payment obligations:

> Hackney asks the Court to add language to the MSA and require the Agreed Judgment to be entered only on the contract claims, *and to exclude the other claims that were asserted in the lawsuit*. Hackney's request would require this Court to materially change the terms of the parties' agreement and weaken *the judgment given as security for breach*.

Pls.' Reply 6-7 (Doc. 158) (emphasis added).  Again, Plaintiffs do not explain why an agreed judgment given to secure Defendants' payment obligations or breach of those obligations under the MSA would entitle them to an agreed judgment against Defendant for claims other than Defendants' breach of their payment obligations. All other claims asserted by the parties in this case were released under the MSA as part of the parties' settlement such that these claims, at a minimum, should be dismissed without prejudice pursuant to the parties' release and settlement because, as explained, Plaintiffs' release of their claims was not made subject to or contingent upon Defendants' future performance of their payment obligations under the MSA, although the parties could have negotiated and included such language in the MSA. As drafted, the plain language of the MSA makes the parties' full, final, and mutual release of all claims effective on the date the MSA was executed because the release of claims is not unambiguously tied to or contingent upon the occurrence of any future event.

As a result, there should be no need to further delay entry of an order or judgment dismissing the released claims and this action without prejudice, until after Defendants' performance is complete under the MSA.  In the event Defendants default, Plaintiffs may enforce the settlement agreement to obtain a judgment against Defendants for any amounts owed under the MSA, and, if the claims released by Plaintiffs are dismissed without prejudice, they may be asserted again at a later

point.  Even if the parties are unable to reach agreement regarding the terms of a formal agreed judgment, the MSA makes clear that the parties agreed that Defendants' payment obligations are secured by an agreed judgment in Alston and Wang's favor, and the MSA includes the material terms of any such agreed judgment.  Thus, even if Defendants do not execute an agreed judgment that comports with the limited language in the MSA as set forth above, a court with jurisdiction will still be able to enforce the settlement agreement as written and enter a judgment in accordance with the MSA upon proof of the agreement and Defendants' default.

On the other hand, the court does not have authority under Texas law to enter an agreed judgment to which Defendants do not consent or to which they have withdrawn their consent. *Padilla*, 907 S.W.2d at 461. Thus, even if the court determined that Plaintiffs' proposed agreed judgment was consistent with the MSA, it could not force Defendants to execute the document or enter Plaintiffs' proposed agreed judgment absent Defendants' consent, and any such judgment would be void.  *Leal*, 892 S.W.2d at 857; *Samples Exterminators*, 640 S.W.2d at 874-75. Accordingly, Plaintiffs' objection that Defendants should be ordered to execute their version of the agreed judgment is **overruled,** and Hackney's objection in this regard is **sustained.**

## VII.    Plaintiffs' Objections Regarding Retention of Jurisdiction

Plaintiffs object to the extent that the magistrate judge did not address their request for the court to retain jurisdiction "over this matter to ensure compliance with the [MSA] and for purposes of enforcement of the judgment." Pls.' Obj. 4 (Doc. 142).  Plaintiffs further assert that Hackney did not respond to this objection and maintain that the court "should retain jurisdiction over its judgment for the reasons set forth in their Motion to Enforce" because [f]ederal courts may continue to exercise jurisdiction over their judgments if so provided in the judgment." Pls.' Reply 8 (Doc. 158-

Memorandum Opinion and Order – Page 36

1).   Contrary to Plaintiffs' assertion, Hackney responded to this objection by contending that Plaintiffs' request for the court to retain jurisdiction to ensure compliance with the MSA is premature because no judgment has been entered, and Plaintiffs have not followed the proper procedure of pleading and proof to enforce the settlement agreement.

Once a federal action has been dismissed, enforcement of a settlement generally requires a separate basis for subject matter jurisdiction independent of the underlying suit unless the court retained jurisdiction to enforce the settlement agreement.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994).  In this regard, the Court in *Kokkonen* explained:

> If the parties *wish* to provide for the [district] court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. When the dismissal is [by court order] pursuant to Federal Rule of Civil Procedure 41(a)(2), which specifies that the action "shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper," the parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order. . . . [W]hen . . . the dismissal is [by a stipulation signed by all parties] pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) . . . the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree. Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.

*Id.*

Here, the MSA does not mention retention of jurisdiction by the court upon dismissal of this action, and the parties have yet to submit a joint stipulation or notice of dismissal of this action or agreed motion to dismiss the action that contains a request for the court to retain jurisdiction for purposes of enforcing the MSA.  If the parties intended to delay dismissal of this action and entry of judgment until after Defendants either performed their payment obligations or defaulted under the

MSA, there would be no reason for the court to retain jurisdiction, as the case would not be dismissed.

The court notes, however, that it has no intention of holding this case in abeyance pending Defendants' performance under the MSA, which is spread out over a period of approximately 20 months until fall October of 2017.  While the court originally gave the parties six months to file a joint stipulation or notice of dismissal or agreed motion to dismiss this action in light of the parties' settlement of this action, which is much longer than the court normally gives parties after a case has settled, it never indicated that it was willing to delay dismissal of this action for almost two years pending Defendants' performance under the MSA.  Given the parties' settlement and release of all claims in this case that were asserted or could have been asserted, except for Defendants' payment obligations under the MSA, and because the MSA does not condition the settlement of the claims asserted by the parties in this case on Defendants' performance of its payment obligations under the MSA, the court sees no utility in further delaying the dismissal of this case.  If the parties request the court to retain jurisdiction to enforce their settlement agreement after dismissal of this case, they may request the court to do so when they file a joint stipulation or notice of dismissal or agreed motion to dismiss this action.  Until such time, the court agrees with Hackney that Plaintiffs' request in this regard is premature.  Accordingly, Plaintiffs' objection to the Report with respect to retention of jurisdiction is **overruled**, and Hackney's objection is sustained to the extent that the court agrees that retention of jurisdiction is premature.

## VIII.   Plaintiffs' Objections Regarding Attorney's Fees and Sanctions

As noted, the magistrate judge recommended that the court deny Plaintiffs' request for "attorneys' fees and/or sanctions for Defendants' breaches of confidentiality, purposeful delays, and

expressed intent not to comply with their payment obligations" because it was raised for the first time in Plaintiffs' reply brief, and Plaintiffs failed to set forth any legal authority to support the request. Report 7. Plaintiffs object, contending that they raised the issue in their Supplemental Motion. Alternatively, or in addition, Plaintiffs request to submit evidence in support of their request for attorney's fees. Hackney responds that Plaintiffs have not set forth any legal authority that supports their request for attorney's fees and sanctions, and he is aware of none. Plaintiffs contend that the court has inherent authority to award sanctions for the wrongful conduct by Defendants alleged in their Motions, and the court "may award attorney's fees for Defendants' failure to comply with the mediated settlement agreement pursuant to Section 38.001, Texas Civil Practice & Remedies Code." Pls.' Obj. 3 (Doc. 142). In their reply in support of their objections, Plaintiffs continue to maintain that "the Court should allow [them] to put on evidence of their attorney's fees," but they "withdraw their pending request for sanctions and/or attorney's fee, without prejudice to re-urging same." Pls.' Reply 8 (Doc. 158-1). Plaintiffs assert that, "[w]hile [they] believe that their current request was properly made, [they] acknowledge the Magistrate Judge's ruling and will make a formal request for attorney's fees and costs by separate motion pursuant to FED. R. CIV. P. 54(d)(2)(A)." *Id.*

Because of Plaintiffs' conflicting statements regarding their request to submit evidence and the withdrawal of their request for sanctions and attorney's fees, the court addresses the objection out of an abundance of caution. Plaintiffs cite no legal authority, and the court is not aware of any that would authorize it to sanction Defendants for the conduct alleged in Plaintiffs' Motions and discussed in this order. Although Plaintiffs characterize Defendants' conduct as "willful and intentional breaches" of the confidentiality provision in the MSA, "purposeful delays" in executing

**Memorandum Opinion and Order – Page 39**

formal settlement documentation, and "expressed intent to not comply with their payment obligations," Pls.' Reply 9 (Doc. 137), garden-variety breaches of contract such as this, would not warrant the imposition of sanctions even if substantiated.

Under Texas law, attorney's fees are recoverable under the Texas Civil Practice & Remedies Code section 38.001 when a party prevails on a breach of contract claim. *Palavan v. McCulley*, 498 S.W.3d 134, 143 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "Typically, for breach of contract claims, this requires obtaining actual damages"; however, a party can also be a prevailing party by obtaining specific performance of a contract. *Id.* Thus, attorney's fees are recoverable under section 38.001 when a party obtains an award of specific performance, for example, to enforce a settlement agreement that ends ongoing litigation or requires performance of a "material contract right in a Rule 11 agreement." *Id.*; *Boyaki v. John M. O'Quinn & Assocs., PLLC*, No. 01-12-00984-CV, 2014 WL 4855021, at *14 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, pet. denied) (mem. op.).

Failure of Defendants to make requisite payments under the MSA would be considered a material breach, as it goes to the heart of the parties' settlement agreement to mutually release any and all claims asserted or that could have been asserted in this action, other than Defendants' payment obligations under the MSA, in exchange for Defendants' Settlement Payment. Plaintiffs' unsupported assertions and hearsay evidence, however, are insufficient to establish that Defendants breached the MSA by failing to make payment obligations after the requisite notices of default.

Plaintiffs' evidence that Defendants breached the "Mutual standard confidentiality" provision in the MSA is similarly deficient. Moreover, Plaintiffs do not contend that they suffered any actual damages as a result of the alleged breach of the confidentiality provision, and they do not request that the court enforce Defendants' compliance with the confidentiality provision by specific

performance. Regardless, there is also no indication that the parties considered the "Mutual standard confidentiality" provision to be a material contract right or that specific performance of this provision would end the litigation.

Further, for the reasons already explained, the failure to execute formal settlement documents does not justify an award of specific performance because the MSA does not unambiguously require the execution of such documentation to finalize the parties' settlement agreement, and the execution of such documentation is not a material contract right under the MSA. Even if a legal basis existed to justify an award of attorney's fees as a result of Plaintiffs' motions to enforce the MSA, as correctly noted by the magistrate judge, no evidence was submitted in support of Plaintiffs' request for attorney's fees. Accordingly, Plaintiffs are not entitled to attorney's fees or sanctions and their objection in this regard is **overruled.** As the court has determined that Plaintiffs are not entitled to recover attorney's fees, it **denies** the request in their objections to submit evidence of fees incurred.

## IX.    Conclusion

For the reasons stated, the **accepts as herein modified** the findings and conclusions of the magistrate judge.  Specifically, the court **rejects** the magistrate judge's findings and conclusions regarding an agreed judgment; **accepts** the magistrate judge's findings and conclusions that Plaintiffs have not established an uncured default by Defendants; and **accepts** the magistrate judge's findings and conclusions regarding Plaintiffs' request for attorney's fees and sanctions. The court **overrules** Plaintiffs' objections, **sustains** Hackney's objections, to the extent that the court concludes that Plaintiffs are not entitled to the relief sought, and **denies** Plaintiffs' Motions (Docs. 100, 115). Additionally, Plaintiffs' request in their objections to submit evidence in support of their request for attorney's fees is **denied.**

Further, as the parties have released and settled all claims in this case, except for Defendants' new payment obligations under the MSA, the court sees no reason to further delay the resolution of this action. The parties are, therefore, **directed** to file by **May 1, 2017**, a joint stipulation or notice of dismissal of this action or an agreed motion to dismiss this action that is signed by all parties or their counsel of record. The joint stipulation or notice of dismissal or agreed motion to dismiss this action need not contain detailed information regarding the terms of the parties' settlement. It needs only state that all remaining parties have agreed to the dismissal of this action pursuant to their settlement agreement. If the parties present an agreed motion for the court's consideration that does not specify whether the parties' claims or this action will be dismissed with or without prejudice, dismissal of the action will be without prejudice. *See* Fed. R. Civ. P. 41(a)(2). *Given the contentious nature of this litigation in which virtually every motion, including procedural motions, have been opposed and unnecessarily litigated, the court sees no utility in further delaying this deadline in light of the parties' mediated settlement. As the parties are aware by the length of this opinion and the acrimonious nature of this action, the court has consumed an inordinate amount of scarce judicial resources on this matter. The court will not continue down this path to nowhere. Accordingly, no further extensions of this deadline will be granted and failure of the parties to file a joint stipulation or notice of dismissal or agreed motion to dismiss as directed will result in the imposition of sanctions against the offending party or parties, their attorneys, or both, as the court deems appropriate.*

**Memorandum Opinion and Order – Page 42**

**It is so ordered** this 31st day of March, 2017.


Sam A. Lindsay
United States District Judge